IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

RODNEY RIGSBY, CATHERINE CONRAD
and QUINCY M. NERI,

                 Plaintiff,

        v.

CHRIS MISCIK, BRUCE BERNDT, BERNDT, CPA,
MICHAEL RILEY and AXLEY BRYNELSON, LLP,

                Defendants.

OPINION and ORDER

14-cv-23-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

     This case arises out of a car accident that injured defendant Chris Miscik. Pro se plaintiff Rodney Rigsby was Miscik's business partner at the time. Rigsby alleges that he and plaintiffs Catherine Conrad and Quincy Neri (also pro se) agreed to draft a number of documents to be used in Miscik's state court litigation about the accident in exchange for half of the damages that Miscik recovered. Plaintiffs allege that Miscik later hired counsel (defendants Axley Brynelson, LLP, and Michael Riley) to represent him in the state proceedings and then used the materials plaintiffs drafted to obtain a settlement without sharing the proceeds with plaintiffs as promised. In addition, plaintiffs allege that defendants Bruce Berndt and Berndt, CPA (the accountants for Rigsby and Miscik at the time) helped Miscik hide the settlement from plaintiff.

     I allowed plaintiffs to proceed on the following claims related to these allegations: (1)

1

defendants Axley Brynselson, Riley and Miscik infringed plaintiffs' copyright by copying litigation documents for which plaintiffs owned the copyright; (2) defendant Miscik breached his contract with plaintiffs by failing to pay them for their services; and (3) defendants Bruce Berndt and Berndt, CPA breached their fiduciary duty to plaintiffs by hiding the settlement money.

Two motions for summary judgment are before the court, one filed by defendants Axley Brynselson, Riley and Miscik and one filed by defendants Bruce Berndt and Berndt, CPA. Dkt. ##175 and 203. Having reviewed the parties' submissions, it is clear that all defendants are entitled to summary judgment. Plaintiffs have adduced no admissible evidence showing that any of the defendants infringed plaintiffs' copyright, breached a contract with plaintiffs or hid any settlement money from them. Rather, plaintiffs' summary judgment filings show that their true grievance is that Miscik accepted a settlement offer that was much lower than what they wanted him to accept. (The settlement was for $5000; plaintiffs believed the settlement should have been more than $1 million.) However, the agreement was for half of Miscik's settlement and that is exactly what Rigsby received. (As it turns out, the other plaintiffs did not have an agreement with Miscik.) If plaintiffs believed they were entitled to more, they should have negotiated a different agreement.

OPINION

A.  Copyright (defendants Axley Brynelson, Riley and Miscik)

In support of their motion to dismiss, dkt. #22,  defendants Axley Brynelson, Riley and Miscik argued that the copyright claim did not have merit because the documents that defendants allegedly copied were the result of the unauthorized practice of law.  Dfts.' Br., dkt. #23, at 7-10.  I rejected this argument at the pleading stage because defendants cited no authority adopting their position and the leading treatise took the opposing view.  Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 2.17 ("[T]he fact that a copyrightable work is being used for illegal purposes should not constitute a defense to copyright infringement.").  See also Dream Games of Arizona, Inc. v. PC Onsite, 561 F.3d 983, 990 (9th Cir. 2009) (holding that plaintiff could sue for copyright infringement of gambling video game found to be illegal by state supreme court).  However, I noted that "[t]here may be strong arguments for declining to follow Nimmer and Dream Games in this case" and that "[d]efendants are free to develop their argument in the context of a motion for summary judgment."  Dkt. #72 at 11.

Defendants have not reasserted their argument about the unauthorized practice of law in their summary judgment motion, so I will not reconsider that issue.  Instead, defendants argue that they are entitled to summary judgment for several other reasons:  (1) defendants did not copy any of plaintiffs' copyrighted documents; (2) using copyrighted materials as part of litigation is "fair use" under 17 U.S.C. § 107; (3) plaintiffs gave defendant Miscik a license to use the documents for litigation purposes; and (4) plaintiffs

3

are not entitled to any damages.  (Defendants also argue that many of the documents at issue are not protected by copyright because they are not original works, but I already limited the scope of plaintiffs' copyright claim on the same ground in defendants' motion to dismiss, so I need not discuss this issue again.  Dkt. #72 at 11-12.)

It is unnecessary to resolve all of defendants' arguments because plaintiffs' copyright claim fails for the simple reason that defendants deny that they copied any of plaintiffs' documents and plaintiffs have cited no evidence to the contrary.  Dfts.' PFOF ¶¶ 110-11, 113, 117, 120, 123-24, 126-28, 130-31, 136, 138-39, 144-50.  Plaintiffs assert a number of arguments in an attempt to compensate for their lack of evidence, but none of those arguments have any merit.

First, plaintiffs say that defendants did not provide any documentation to prove that they did not copy plaintiffs' work, e.g., Plts.' Resp. to Dfts.' PFOF ¶ 168, dkt. #216, but that argument is misguided.  To begin with, it is not clear what documentation defendants could provide to prove that they *didn't* copy plaintiffs' documents.  Plaintiffs do not identify what they believe defendants should have submitted.  More important, it is well-established in federal court that, on a motion for summary judgment, it is the *plaintiffs'* burden to show that they have sufficient evidence to allow a reasonable jury to find in their favor; the defendants are not required to disprove the plaintiffs' claim.  Shields v. Dart, 664 F.3d 178, 182 (7th Cir. 2011) ("[The plaintiff] asserts that the defendants bore the burden of showing through affidavits that he was not entitled to summary judgment. But this misunderstands [the plaintiff's] burden of production. When a plaintiff . . . fails to produce evidence to

4

defeat summary judgment, a defendant moving for summary judgment need not support its motion with affidavits or other similar materials negating the opponent's claim.") (internal quotations omitted); Marion v. Radtke, 641 F.3d 874, 876-77 (7th Cir. 2011) ("When a plaintiff fails to produce evidence, the defendant is entitled to judgment; a defendant moving for summary judgment need not produce evidence of its own.").  The defendants' only burden is to raise the issue in their summary judgment motion and point to the lack of evidence favoring plaintiffs.  Modrowski v. Pigatto, 712 F.3d 1166, 1167 (7th Cir. 2013). Finally, there is no rule that a party must submit documentary evidence to support his position; he may rely on self-serving affidavits so long as the party has personal knowledge of the events described.  Visser v. Packer Engineering Associates, Inc., 924 F.2d 655, 659 (7th Cir. 1991).  Of course, defendants have personal knowledge of the issue whether they copied plaintiffs' documents, so plaintiffs needed to come forward with their own evidence to show that there is a genuine issue of material fact for trial, but they failed to do that.

Second, plaintiffs complain throughout their briefs and proposed findings of fact that defendants deprived them of necessary discovery.  However, a party may not defeat a motion for summary judgment simply by arguing generally that he needs more discovery, which is what plaintiffs have done.  Rather, he must file a separate motion under Fed. R. Civ. P. 56(d) and identify exactly what he needs that the defendants have refused to provide and explain why he believes that evidence would have made a difference.  American Needle Inc. v. National Football League, 538 F.3d 736, 740-41 (7th Cir. 2008).  In this case, plaintiffs do not identify the evidence they believe is missing that would help them prove their

5

copyright claim, much less develop an argument that defendants refused to provide that evidence in response to a proper discovery request.  Accordingly, this argument fails.

Third, plaintiffs argue that it is reasonable to infer that defendants copied the original complaint (which plaintiffs say they drafted) when defendants filed an amended complaint in the state court action.  This argument fails at the outset because plaintiffs do not identify any particular passages from the amended complaint that are similar to the original complaint.  Instead, plaintiffs say that, "[b]y Riley and Axley doing an amended complaint [they] infringed on Rigsby[']s work product because he had to use the content in the original complaint to know what to add in the amended complaint."  Plts.' Resp. to Dfts.' PFOF ¶ 125, dkt. #216.  Plaintiffs seem to be arguing that *all* amended complaints necessarily infringe a copyright related to the previous complaint when the amended complaint is prepared by a different person.  To the extent that is true, I would have no difficulty concluding that a lawyer's use of original complaint in that context would qualify as "fair use" under 17 U.S.C. § 707.  A rule requiring new counsel to obtain permission from a previous drafter before filing an amended complaint would allow the previous drafter to stall a lawsuit until his demands were met, no matter how unreasonable.  Kienitz v. Sconnie Nation LLC, 766 F.3d 756, 759 (7th Cir. 2014) ("[The] goal [of the fair use defense] is to facilitate a class of uses that would not be possible if users always had to negotiate with copyright proprietors."); Neri v. Monroe, 726 F.3d 989, 993 (7th Cir. 2013) (fair use defense may be appropriate when alleged infringer did not have other alternatives).

Finally, plaintiffs argue that defendants "must have" copied plaintiffs' documents

because defendants obtained a settlement.  E.g., Plts.' Resp. to Dfts.' PFOF ¶ 47, dkt. #216.
This is a nonsequitur.  The fact that defendants obtained a settlement says nothing about
how they obtained the settlement or the documents they used.  Plaintiffs seem to assume
that the documents they created were indispensable to a settlement, but they have made no
showing to support that assumption.

Even if I were to assume that defendants copied some of plaintiffs' documents,  I
would grant summary judgment to defendants on the copyright claim because the
undisputed facts show that plaintiff Rigsby gave Miscik a license to use any documents that
plaintiffs prepared.  "A copyright owner can grant a nonexclusive license orally, or [one] may
even be implied from conduct.  In fact, consent given in the form of mere permission or lack
of objection is also equivalent to a nonexclusive license and is not required to be in writing."
ITOFCA, Inc. v. MegaTrans Logistics, Inc., 322 F.3d 928, 940 (7th Cir. 2003) (internal
quotations and alterations omitted).  It is reasonable to infer that Rigsby gave defendants
a license by entering into a contract that gave him a right to a portion of Miscik's recovery
in exchange for plaintiffs' legal help.  After all, if Miscik did not have the right to use
plaintiffs' documents, what would have been the point of the contract?  In other words, if
I accept plaintiffs' argument that Miscik was infringing plaintiffs' copyright by using the
documents in litigation, it would deprive Miscik of the benefit of his bargain because the
contract would be requiring him to pay for something he could not use.  Even from plaintiffs'
perspective, it would make little sense to prohibit Miscik from using the documents in
litigation.  If the documents were as creative and valuable as plaintiffs believe they are, then

plaintiffs would want Miscik to use the documents to maximize his chances of a larger recovery, which, in turn, would have entitled Rigsby to a larger amount as well.

The context of the agreement and the parties' subsequent conduct confirms a conclusion that defendants had a license to use the documents for the purpose of litigation and settlement.   Although plaintiff Rigsby and defendant Miscik made their initial agreement before Miscik retained counsel, Plts.' Resp. to Dfts.' PFOF ¶¶ 15-16, dkt. #216, Rigsby and Miscik reaffirmed their agreement *after* counsel got involved, id. at ¶¶ 18-19, showing that Rigsby anticipated that defendants would make whatever use they could of the documents plaintiffs drafted.  Again, any argument to the contrary is a concession by Rigsby that he was expecting something for nothing, or, in legal parlance, that he had not given Miscik any consideration, which would render the contract invalid.   Levin v. Perkins, 12 Wis. 2d 398, 403, 107 N.W.2d 492, 495 (1961) ("[A] promise needs consideration to be binding and enforceable.").

Plaintiffs do not cite any evidence suggesting that they instructed Miscik that he could not use the documents they drafted for litigation.  In fact, the evidence suggests the opposite.  In an email Rigsby wrote plaintiff before a meeting between Miscik and his counsel, Rigsby told Miscik to "give this attorney all the tools to get the best deal for you," dkt. #204-7, which is consistent with a view that Rigsby wanted Miscik to share the documents plaintiffs drafted with his counsel.  Accordingly, I have no difficulty concluding as a matter of law that Rigsby's words and deeds gave Miscik an implied license to use plaintiffs' documents for litigation and settlement.

8

In the section of their brief discussing the license issue, plaintiffs say that "[i]t is not reasonable to assume that splitting proceeds means *a free giveaway for services* and that someone else's attorney can use all of your hard work for themselves *and exclude you*." Dkt. #213 at 26 (emphasis added). This argument shows that plaintiffs' real grievance is not that defendants allegedly used plaintiffs' litigation documents, but that defendants did not pay plaintiffs as promised. That issue is not related to plaintiffs' copyright claim, but to their breach of contract claim, which I will address below.

## B. State Law Claims

Plaintiffs and defendants do not have diverse citizenship, so jurisdiction for plaintiffs' state law claims arises under 28 U.S.C. § 1367, which applies when a state law claim arises out of the same facts as a federal claim. Houskins v. Sheahan, 549 F.3d 480, 495 (7th Cir. 2008). Although the general rule is that district courts should relinquish jurisdiction over state law claims when all the federal claims are dismissed before trial, a court has discretion to decide the state law claims for good reasons, Whitely v. Moravec, 635 F.3d 308, 311 (7th Cir. 2011), including if the resolution of the state law claims is clear. Cortezano v. Salin Bank & Trust Co., 680 F.3d 936, 941 (7th Cir. 2012). In this case, the undisputed facts make it clear that plaintiffs' state law claims have no merit.

### 1. Breach of contract (defendant Miscik)

With respect to the breach of contract claim, plaintiffs alleged in their complaint that

9

"Miscik breached his contract in not paying out Rigsby when he got paid out from case no. 12-cv-260." Dkt. #1, ¶ 54. As it turns out, that allegation was false. It is undisputed that defendant Miscik paid plaintiff Rigsby $2500 in exchange for his services. Dfts' PFOF ¶ 38; Plts.' Resp. to Dfts.' PFOF ¶ 38, dkt. #216. In accordance with the parties' agreement, this amount was half of the settlement that Miscik received. Dfts.' PFOF ¶ 19, dkt. #216. In fact, Rigsby's portion was nearly twice as much as Miscik's. After deducting plaintiff Rigsby's half, payments to subrogated insurance carriers and attorney fees and costs, Miscik was left with $1264.82. Dfts.' PFOF pp 36, dkt. #216.

Plaintiffs attempt to challenge these undisputed facts on a number of grounds. For example, they say that they are actually entitled to half of more than $1 million because that was the limit of the insurance policies held by the defendants in the state court case and because that was the amount in the original settlement offer that *plaintiffs* drafted on behalf of Miscik. However, this argument is a nonstarter because the agreement between Rigsby and Miscik states that Miscik would give Rigsby "50% of the settlement monies *received* from the auto accident case." Dkt. #206-9 (emphasis added). Thus, it is irrelevant what plaintiffs believe the settlement should or could have been; the only question is whether Miscik gave Rigsby half of what Miscik actually received. Although plaintiffs repeat many times throughout their briefs and responses to defendants' proposed findings of fact that Miscik "settled for more than $5,000," e.g., Plts.' Resp. to Dfts.' PFOF ¶ 34, dkt. #216, their only "evidence" in support of that argument is the *offer* that they made to the defendants in the state court case. Obviously, an offer is not binding without an acceptance. American

10

National Property & Casualty Co. v. Nersesian, 2004 WI App 215, ¶ 16, 277 Wis. 2d 430, 441, 689 N.W.2d 922, 927 ("Until accepted in the mode and manner expressly provided by the terms of the offer, there remains an unaccepted offer, which cannot, in itself, be considered a binding contract."). Because plaintiffs cite no evidence that the defendants in the state court case ever accepted the settlement offer plaintiffs made, that offer has no bearing on this case. Defendants submitted a copy of the settlement agreement and the check Miscik received, both of which show that Miscik received a $5000 settlement. Dkt. ## 148-5 and 205-2.

Alternatively, plaintiffs allege that defendants are withholding discovery about the "real" amount of the settlement. The one example plaintiffs provide are unspecified "tax documents," Plts.' Resp. to Dfts.' PFOF ¶ 37, dkt. #216, but plaintiffs do not point to any discovery request they made for Miscik's tax information during the relevant time period. Further, although plaintiffs filed motions to compel discovery in this case, they do not point to any motion in which they sought to compel Miscik to produce any tax records. Accordingly, that argument is forfeited.

Plaintiffs Conrad and Neri do not have a valid claim either. To begin with, when Conrad and Neri intervened in this lawsuit, they stated that their claims were "identical" to Rigsby's and they adopted his complaint as their own. Dkt. #104 at 1-2; dkt. #106 at 1-2. I relied on those representations when granting the motions to intervene. Dkt. #156. Thus, Conrad's and Neri's contract claim should rise and fall with Rigsby's. Now, Conrad and Neri say that they had separate, verbal agreements with Miscik, but I did not allow Conrad

11

and Neri to proceed on those claims, so allegations about a verbal agreement are outside the scope of the lawsuit.

Even if I considered Neri's and Conrad's new allegations, plaintiffs have not cited any evidence that either Neri or Conrad had an enforceable contract with Miscik. Neri testified during her deposition that she was "honestly . . . not sure" whether she had an agreement with Miscik, and, if she did have an agreement, she could not identify any of its terms. Dkt. #182 at 26-29. Instead, she stated that she had an agreement *with Rigsby* to receive a percentage of the amount Miscik gave him. Id. at 31. Conrad testified that Miscik "was going to pay me for my time and then Mr. Rigsby was also going to, you know, help with that." Dkt. #183 at 26. However, she admitted that she and Miscik never established the terms of the agreement. Id. at 27-30. Without a definite agreement on terms, there is no enforceable contract. Management Computer Servs., Inc. v. Hawkins, Ash, Baptie & Co., 206 Wis. 2d 158, 178, 557 N.W.2d 67, 75 (1996) ("Vagueness or indefiniteness as to an essential term of the agreement prevents the creation of an enforceable contract, because a contract must be definite as to the parties' basic commitments and obligations."); Goebel v. National Exchangors, Inc., 88 Wis. 2d 596, 615, 277 N.W.2d 755, 765 (1979) ("The general rule is that price is an essential ingredient of every contract for the transfer of property or rights therein or for the rendering of services."). See also Tinder v. Pinkerton Security, 305 F.3d 728, 735-36 (7th Cir. 2002) (witness's testimony that she "does not recall" event not sufficient to raise genuine issue of material fact). Thus, although Neri and Conrad may have a claim against *Rigsby* if he failed to share his portion of the settlement,

they have no claim against Miscik.

2.  <u>Breach of fiduciary duty (defendants Bruce Berndt and Berndt, CPA)</u>

Plaintiffs' breach of fiduciary duty claim is contingent on their breach of contract claim.  Plaintiffs' theory is that Berndt breached a fiduciary duty to plaintiffs by hiding the "real" amount of defendant Miscik's settlement while acting as Rigsby's and Miscik's accountant.  Even if I assume that Berndt had a fiduciary duty to any of the plaintiffs, this claim fails because plaintiffs have adduced no evidence that Miscik received a larger settlement than he reported.

Plaintiffs repeat their arguments that *defendants* failed to prove that they did not violate plaintiffs' rights and that defendants are withholding discovery, but these arguments fail for the same reasons that they failed on plaintiffs' other claims.  Plaintiffs add that the discovery deadline in this case is not until July 2015 and that they "can obtain more evidence to support their case."  Plts.' Br., dkt. #200, at 2.  However, the court set a discovery deadline after the summary judgment deadline to allow the parties to continue gathering evidence *for trial*.  A party cannot point to the later discovery deadline as a reason for denying a summary judgment motion.  The Court of Appeals for the Seventh Circuit has stated many times that, at summary judgment, the plaintiffs must "put up or shut up" or, in other words, they must "show what evidence [they have] that would convince a trier of fact to accept [their] version of events."  <u>Johnson v. Cambridge Industries, Inc.</u>, 325 F.3d 892, 901 (7th Cir. 2003).  Because plaintiffs have not met their burden, I am granting defendants

Bruce Berndt's and Berndt, CPA's motion for summary judgment.

## C.  Other Issues

As they have done throughout the case, plaintiffs have raised many issues that are outside the scope of the claims on which they were allowed to proceed.  Because plaintiffs may not amend their complaint in the context of a brief in opposition to summary judgment, Anderson v. Donahoe,  699 F.3d 989, 997 (7th Cir. 2012), I have disregarded all of those other issues.

## D.  Sanctions

All of the claims plaintiffs filed in this case are legally frivolous.  Although it is true that some of the claims survived a motion to dismiss, this was only because I was required to accept plaintiffs' allegations as true at the time.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 508, n. 1 (2002).  Plaintiffs' summary judgment submissions have made it clear that all of plaintiffs' allegations are either baseless or downright false, so plaintiffs should have known when they filed the lawsuit that they had no chance of success.  Their request in this case for more than $100 *billion* dollars in damages, Plts.' Resp. to Dfts.' PFOF ¶¶ 158-59, dkt. #216, is simply further proof that their claims have no basis in reality.

This is not the first time that plaintiffs have filed a lawsuit without merit in this court. With respect to Quincy Neri, in both Neri v. Sentinel Insurance Company, No. 13-cv-382-jdp (W.D. Wis. Aug. 22, 2014), and Neri v. Pinckney Holdings, LLC, No. 12-cv-600-slc

(W.D. Wis. Oct. 25, 2012), the court dismissed Neri's claims because they were duplicative of a previous lawsuit that she filed.

With respect to Catherine Conrad, I awarded attorney fees to the defendants in Conrad v. Bendwald, No. 11-cv-305-bbc (W.D. Wis. Nov. 2, 2012), aff'd, 500 Fed. Appx. 526 (7th Cir. 2013), because the "suit was ill-conceived from the beginning, brought without any serious investigation of the law and extended long past the time that plaintiffs should have realized its lack of merit." I dismissed Conrad v. Bell, Moore & Richter, S.C., No. 11-cv-539-bbc (W.D. Wis. Aug. 30, 2011), at the screening stage because it was clear that subject matter jurisdiction was lacking. I dismissed both Conrad v. Russell, No. 11-cv-570-bbc (W.D. Wis. Sept. 1, 2011), and Conrad v. AM Community Credit Union, No. 13-cv-461-bbc (W.D. Wis. Aug. 12, 2013), aff'd, 750 F.3d 634 (7th Cir. 2014), at the screening stage as well because it was obvious from the face of those complaints that the defendants had not violated her federal rights. In Conrad v. Batz, No. 13-cv-475-bbc (W.D. Wis. Feb. 24, 2014), I dismissed most of Conrad's claims in a screening order because they were legally frivolous and I dismissed the remaining claims after the defendants pointed out that Conrad did not have standing to bring those claims.

Plaintiff Rigsby was a co-plaintiff in Conrad v. Bendewald, 11-cv-305-bbc. He filed motions to intervene in Neri v. Pinckney Holdings, LLC, No. 12-cv-600-slc and Conrad v. AM Community Credit Union, No. 13-cv-461-bbc, but the motions were denied as moot after those cases were dismissed.

In Conrad v. AM Community Credit Union, 750 F.3d 634, the court of appeals noted

15

plaintiff Conrad's history of filing frivolous and burdensome litigation.  In addition, the court stated that it did not appear that Conrad had satisfied her financial obligations imposed by courts.  As a result, the court of appeals directed this court to "consider enjoining [Conrad] from filing further suits until she pays her litigation debts."  Id. at 638.

The appellate decision in AM Community Credit Union was plaintiff Conrad's notice that she was skating on thin ice and needed to stop filing vexatious, frivolous lawsuits in federal court.  Because this case shows that Conrad did not heed that notice, I am directing her to show cause why this court should not enjoin her from filing additional lawsuits in this court until she satisfies her federal court debts.  Support Systems International Inc. v. Mack, 45 F.3d 185 (7th Cir. 1995).  This order places Rigsby and Neri on notice that they may be subject to the same sanction if they do not refrain from litigating other frivolous claims in this court.

ORDER

IT IS ORDERED that

1.  The motion for summary judgment filed by defendants Axley Brynselson, LLP, Michael Riley and Chris Miscik, dkt. #203, is GRANTED.

2.  The motion for summary judgment filed by defendants Bruce Berndt and Berndt, CPA, dkt. #175, is GRANTED.

3.  The clerk of court is directed to enter judgment in defendants' favor and close this case.

4.  Plaintiff Conrad may have until March 25, 2015, to show cause why she should

not be prohibited from filing new lawsuits in this court until she shows that she has satisfied

any federal court fees or sanctions that this court has imposed on her.

Entered this 10th day of March, 2015.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

17